COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Elder and Fitzpatrick


ENGINEERING DESIGN & SALES
AND
FIRST OF GEORGIA INSURANCE COMPANY

                                        MEMORANDUM OPINION[*]
v.    Record No. 2181-94-3                  PER CURIAM
                                          MAY 23, 1995
JOYCE A. MILLER


                              FROM THE VIRGINIA WORKERS'
COMPENSATION COMMISSION

            (Martha White Medley; Daniel, Vaughan, Medley &
            Smitherman, on brief), for appellants.

            (Henry G. Crider; Shupik & Crider, on brief), for
            appellee.


     Engineering Design & Sales and its insurer (hereinafter

collectively referred to as "employer") contend that the Workers'

Compensation Commission erred in finding that (1) Joyce A. Miller

proved a compensable occupational disease under the requirements

of Code § 65.2-400, rather than a noncompensable aggravation of

an ordinary disease of life; (2) Miller's claim should be

analyzed under the requirements of Code § 65.2-400 rather than

§ 65.2-401; (3) an occupational disease was communicated to

Miller by her physicians; (4) Miller did not refuse medical

treatment; and (5) Miller did not fail to market her residual

work capacity.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Accordingly, we summarily affirm the commission's decision.  Rule 5A:27.

<u>Occupational Disease vs. Ordinary Disease of Life</u>[1]

The commission did not err in treating Miller's disease as a compensable occupational disease in accordance with the six requirements of Code § 65.2-400.  On appeal, the commission's findings must be construed in the light most favorable to the prevailing party below.  <u>Piedmont Mfg. Co. v. East</u>, 17 Va. App. 499, 504, 438 S.E.2d 769, 773 (1993).  "Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact."  <u>Island Creek Coal Co. v. Breeding</u>, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988) (citation omitted).  "[I]t is fundamental that a finding of fact made by the Commission is conclusive and binding upon this court on review.  A question raised by conflicting medical opinion is a question of fact."  <u>Commonwealth v. Powell</u>, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986).

The medical opinions from Miller's two treating physicians provide the credible evidence necessary to support the commission's finding.  Medical evidence from Drs. Settle and Kramer showed that Miller's carpal tunnel syndrome could be traced to her employment.  Furthermore, there was no evidence

---

[1]On appeal, employer does not contest the commission's finding that Miller's carpal tunnel syndrome qualified as a "disease" for purposes of awarding compensation for an occupational disease.

2

that Miller's prior right arm symptoms had any bearing on her development of carpal tunnel syndrome. The commission, in its role as fact finder, was entitled to give little weight to Dr. Strong's opinion.

Credible evidence also supports the commission's findings that there was no substantial exposure to the causes of Miller's condition outside of her employment. There was no evidence that Miller was exposed to causes outside of her employment which might have led to her disease. "'Reasonable degree of medical certainty' requires only that 'it is at least more probable than not that the disease arose out of and in the course of employment.'" Piedmont, 17 Va. App. at 506-07, 438 S.E.2d at 774 (citations omitted). Miller's evidence met this burden of proof. Accordingly, the commission did not err in finding that Miller proved that she suffered from a compensable occupational disease, and that her claim was properly analyzed under the requirements of Code § 65.2-400 rather than 65.2-401.[2]

### Communication to Miller of an Occupational Disease

"'Under our Workers' Compensation Act, an occupational disease is not compensable until a diagnosis of such has been communicated to the employee.'" Piedmont, 17 Va. App. at 507,

---

[2] Employer also argues that Miller's evidence, at best, established an aggravation of an ordinary disease of life, which is not compensable under the Act. This argument is without merit because the commission correctly concluded that Miller's carpal tunnel syndrome constituted a compensable occupational disease under the requirements of Code § 65.2-400, rather than an ordinary disease of life.

3

438 S.E.2d at 774 (quoting Breeding, 6 Va. App. at 9-10, 365 S.E.2d at 787). "'The diagnosis need not contain precise medical terminology as long as the diagnosis is definite and informs the claimant in clear and understandable language that he or she is suffering from a disease that arises out of and in the course of employment.'" Piedmont, 17 Va. App. at 507, 438 S.E.2d at 774 (quoting Via v. Citicorp Mortgage, Inc., 10 Va. App. 572, 576, 394 S.E.2d 505, 507 (1990)). Employer argues that Miller is not entitled to compensation because she failed to receive a diagnosis of an occupational disease caused by her employment. We disagree.

Miller testified that, at either her November 2 or November 12, 1992 office visit, Dr. Kramer told her that she had carpal tunnel syndrome and that this condition was related to her work. Nerve conduction studies performed on November 12, 1992 revealed bilateral carpal tunnel syndrome. In a December 16, 1993 letter to Miller's attorney, Dr. Kramer indicated that the November 12, 1992 studies confirmed his November 2, 1992 tentative diagnosis of carpal tunnel syndrome. Miller's testimony and the medical records provide credible evidence to support the commission's finding that, as of November 12, 1992, the diagnosis of an occupational disease had been communicated to Miller.

### Refusal of Medical Treatment

We agree with the commission's finding that the employer may not both refuse to pay for treatment and avoid liability when a

4

claimant chooses not to pay for it on her own.  The evidence proved that Miller's surgery was delayed because employer denied liability for her claim, and because she could not afford to pay for the surgery.  Under the circumstances of this case, the commission correctly concluded that Miller's conduct did not amount to an unjustified refusal of medical treatment.

<u>Marketing</u>

The commission found that, prior to Miller's surgery in June 1993, there had been no clear statement from any of the treating physicians that Miller had been released to full or partial duty.  This finding is supported by credible evidence, including the medical records and Miller's testimony.  Miller testified that it was her understanding that she was not released to return to work by her physicians.  Accordingly, we cannot say that the commission erred in holding that it could not find that Miller failed to market her residual work capacity.

For the reasons stated, we affirm the commission's decision.

<u>Affirmed.</u>